IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROBIN AINSWORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. CIV-21-1192-SM |
| KILOLO KIJAKAZI, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Robin Ainsworth (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 10, 11.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings because the Administrative Law Judge (ALJ) improperly formulated his residual functional capacity[1] (RFC) assessment when she improperly considered evidence of both Plaintiff's depression and the consultative examiner's opinion. As a result, the ALJ

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

improperly excluded related limitations from his RFC assessment. Doc. 12, at 3-12. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity."

---

[2]   Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

*Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

C.   **Relevant findings.**

1.   **Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 15-25; *see* 20 C.F.R. §§ 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since March 1, 2017, the alleged onset date;

(2)   had the severe medically determinable impairment of status post prostate cancer;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the RFC to perform light work with the following limitations: (a) lift or carry, push or pull twenty pounds occasionally and ten pounds frequently; (b) sit for six hours out of an eight-hour day total; (c) stand or walk a combined total of six hours out of an eight-hour day total; (d) avoid exposure to extreme heat;

(5)   was able to perform his past relevant work as Manager, Professional Equipment Sales and Service, as an Office

>    Machine Service Supervisor, and as a Sales Representative, Office Machines; and so,
>
> (6) had not been under a disability from March 1, 2017, through March 2, 2021.

See AR 17-25.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-5, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record."

*Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

"The Court consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quotations omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quotations omitted).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quotations omitted). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

    **B.**    **Substantial evidence supports the ALJ's formulation of the RFC.**

Plaintiff argues "the ALJ's consideration of the evidence regarding [his] depression, as well as her analysis of consultative examiner Dr. [Rachele]

5

Floyd's opinion, were defective and resulted in her improperly rejecting any limitations arising therefrom in her [RFC], which was error." Doc. 12, at 3 (capitalizations altered).

Dr. Floyd assessed Plaintiff with Depressive Disorder Due to Another Medical Condition. AR 18. Plaintiff reported to Dr. Floyd that Plaintiff "is depressed due to his medical condition since prostate surgery." *Id.* Plaintiff focuses on Dr. Floyd's assessment that Plaintiff "would be limited in his attention." Doc. 12, at 3. In contrast, the ALJ included no limitations for attention and concentration, and concluded he had only mild limitations in these areas. *Id.* at 3-4. Plaintiff points out that his Montreal Cognitive Assessment (MoCA) results supported Dr. Floyd's conclusion:

> [Plaintiff] reports some difficulty with attention, which was observed on the MoCA. Furthermore, he reports that he loses energy after about 4 hours, and would likely have difficulty maintaining the pace at a full time job.

Doc. 12, at 5 (quoting AR 575). He scored a 24 out of 30 on the MoCA. AR 574. The Court takes judicial notice that a score of 24 places Plaintiff in the "mild cognitive impairment" spectrum. *See* https://www.mocatest.org/faq/ (last visited Aug. 4, 2022).

Dr. Floyd opined:

> From a mental status standing, this individual's ability to understand, remember, and carry out simple and complex

6

>  instructions in a work-related environment would be rated as good to fair. He reports some difficulty with attention, which was observed on the MoCA. Furthermore, he reports that he loses energy after about 4 hours, and would likely have difficulty maintaining the pace at a full time job. He appears capable of maintaining effective social interactions with supervisors, co-workers, and the public. He appears capable of dealing with normal pressures in a competitive work setting.

AR 575. The ALJ found:

>  this opinion somewhat persuasive as supported by the doctor's observations and interview of the claimant and somewhat consistent with the evidence of record. The doctor is a specialist and examined the claimant. Although he has not sought any mental health treatment, the claimant reported issues to the consultative psychologist and the doctor based her opinion on her observations and statements. She noted the claimant reports fatigue after four hours and concentration issues were found on the MoCA. However, the doctor did not have the opportunity to review the medical evidence of record, including the claimant's regular reports of doing well. He is working part-time regularly, helping customers find items, cutting glass, and making keys, showing adequate concentration and stamina in this non-sedentary job. Although the claimant reports a slow pace, he is able to perform a wide range of activities of daily living as well as working part-time despite complaints of fatigue, as detailed above.

*Id.* at 23.

As to Plaintiff's fatigue, he reported that it started after his prostate-related surgery. He received Lupron for six months, but he reported he was still fatigued. He worked four-hour shifts, as his condition did not improve. He pays someone to assist on his three acres of land. He has urinary frequency and had a catheter that allowed him to sleep all night. He removed the catheter

and as a result needs to urinate often, every two hours, and needs to be near the restroom at his part-time job. *Id.* at 20.

The ALJ found "[t]he medical evidence shows less limitation than alleged." *Id.* at 21. The ALJ recapped medical expert Dr. Steven S. Goldstein's testimony from the hearing. *Id.* Dr. Goldstein observed Plaintiff's "main problem is . . . fatigue" from lack of sleep, because he is "up all night having to urinate." *Id.* at 39. Dr. Goldstein noted that a "Texas catheter" could address this. *Id.* at 40. He also noted low testosterone can add to fatigue. He stated that testosterone treatment has proven successful, and that could assist with Plaintiff's fatigue. *Id.* at 41. Dr. Goldstein's treatment notes show Plaintiff reported he was doing well in June 2017, October 2017, January 2018, February 2018, April 2018, June 2018, August 2018, and April 2020. *Id.* at 21. The ALJ concluded that the several medical records where Plaintiff reported he was doing well supported Dr Goldstein's opinion. *Id.*

The ALJ reviewed Plaintiff's "excellent work history," and that in his part-time job, he walks two to five miles during a work shift. *Id.* The ALJ then considered Plaintiff's activities of daily living, which included: ability to walk a mile without rest, a reported slow pace, ability to perform a wide range of activities, to finish what he starts, to follow instructions, to get along with others, to care for his personal needs, engage in hobbies, perform house work

and a variety of yard and gardenwork, makes simple meals, washes dishes, reads, drives, shops, watches TV, goes to church and spends time with his grandchildren. *Id.* He can pay bills, count change and manage bank accounts. *Id.* His wife reported he can care for himself and the house, but at about "half-steam" "half-speed," needing many rest breaks. *Id.*

The ALJ noted her "careful review of the record fails to document sufficient valid, objective medical evidence to substantiate the degree of functional limitations alleged by [Plaintiff.]" *Id.* The ALJ recognized that although working may cause some discomfort, it does not mandate a finding of total disability. *Id.* The ALJ discounted Plaintiff's consistency, noting that the medical evidence of record did not support the degree of limitation Plaintiff alleged. *Id.* at 22-23.

The ALJ found the state agency medical consultants' opinions persuasive. *Id.* at 24. They found Plaintiff had no severe mental impairment, which the ALJ found consistent with the "medical and other evidence considered as a whole." *Id.* The ALJ noted the lack of any mental health treatment for Plaintiff and that Plaintiff's part-time work required adequate concentration and stamina in a non-sedentary setting.

Plaintiff seems to argue that the ALJ's finding that Plaintiff had a mild limitation in concentration, persisting, or maintaining pace mandated a

workplace functional limitation in the RFC assessment. Doc. 12, at 11. But in finding this mild limitation, the ALJ was applying the "paragraph B" criteria, which remains distinct from the RFC assessment. *See* AR 18.

> In assessing a claimant's RFC, "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria [for severity] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. . . . The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]."

*Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) (quoting SSR 96-8p, 1996 WL 374184, at *4).

The ALJ's decision stated that she considered the "entire record" and "all symptoms and the extent to which these symptoms can reasonably be accepted . . . with the . . . evidence" in determining Plaintiff's RFC. AR 20. This, together with the reference to Plaintiff's mental symptoms and diagnosis, provide this Court with adequate grounds to believe that the ALJ considered Plaintiff's alleged mental limitations when formulating the RFC assessment. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (internal quotation marks omitted)). Despite finding that Plaintiff had a mild

limitation in concentration, persisting, or maintaining pace under the paragraph B criteria for severity, the ALJ was "under no obligation" to include limitations in these areas in the RFC. *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013); *see Suttles v. Colvin*, 543 F. App'x 824, 826-27 (10th Cir. 2013) ("Mr. Suttles also objects that the ALJ omitted from the RFC assessment a mild limitation found at step two regarding concentration, persistence, or pace. However, this court has repeatedly held, albeit in unpublished decisions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps.") (collecting cases). The ALJ considered Plaintiff's mental functional capacity and decided that the alleged mental impairments had an inconsequential effect upon Plaintiff's RFC assessment. Substantial evidence supports this determination and the resulting RFC assessment.

### C. Substantial evidence supports the ALJ's discounting of Dr. Floyd's opinion.

As detailed above, the ALJ found Dr. Floyd's opinion "somewhat persuasive." AR 23. The ALJ noted Dr. Floyd did not have the opportunity to review Plaintiff's "regular reports of doing well." *Id.* And although Plaintiff reported fatigue after four hours, the activities of his part-time job showed he had adequate concentration and stamina in a non-sedentary job. *Id.*

The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . including those from

11

[the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ evaluates the persuasiveness of medical opinions by the claimant's physician using five factors, the most important of which are supportability and consistency. *Id.*; *see also Zhu v. Comm'r, SSA*, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021).

> "Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."

*Zhu*, 2021 WL 2794533, at *6 (citations omitted).

Plaintiff argues his reports of "doing well" pertained only to his physical condition. Doc. 12, at 5-6. Because there is no other mental health examination in the record, the ALJ's reliance on these reports was allegedly unsupported. *Id.* at 6. Plaintiff also contends his part-time job and activities of daily living provided improper reasons to discount Dr. Floyd's opinion because he could complete these tasks but only "for part of the day." *Id.* at 7.

As noted above, the ALJ discounted Dr. Floyd's opinion somewhat, finding Plaintiff's stamina at his non-sedentary part-time job, his various and

wide range of reported activities of daily living, and his lack of seeking mental health treatment, warranted light restrictions. AR 22.

"The claimant bears the burden of proof through step four of the analysis." *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). The ALJ provided an adequate narrative explanation for the RFC determination, as the discussion "describ[es] how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065; AR 21-24. And the ALJ's limitation to light work with avoidance of extreme heat amounts to a significant restriction on Plaintiff's physical abilities. *See Marquez v. Saul*, 2021 WL 2073510, at *10 (D.N.M. May 24, 2021) ("[T]he ALJ assigned Marquez an RFC for light work—which itself imposes significant restrictions on certain activities . . . ."); *Meyer v. Comm'r, SSA*, No. CIV-16-1116-R, 2017 WL 2964729, at *2 (W.D. Okla. June 19, 2017) ("Likewise, Plaintiff ignores the significant restriction the ALJ imposed due to the effects of his degenerative disc disease: a limitation to light work."), *adopted*, 2017 WL 2958616 (W.D. Okla. July 11, 2017).

## III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 16th day of August, 2022.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE